STATE

v.

**David L. CROW.**

**No. 2002–407–C.A.**

Supreme Court of Rhode Island.

April 29, 2005.

---

**6.** Respectfully Quoted: A Dictionary of Quotations 76 (Suzy Platt ed. 1993).

Virginia M. McGinn, Providence, for Plaintiff.

Paula Rosin, Providence, for Defendant.

Present: WILLIAMS, C.J.,
GOLDBERG, FLAHERTY, SUTTELL,
and ROBINSON, JJ.

## OPINION

PER CURIAM.

This case came before the Supreme Court for oral argument on November 8, 2004, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After hearing the arguments of counsel and examining the memoranda submitted by the parties, we are of the opinion that cause has not been shown and that this case should be summarily decided.

After a jury trial, defendant David L. Crow was found guilty of two counts of criminal solicitation in violation of G.L.1956 § 11–1–9. Specifically, he was convicted of soliciting Joshua Flynn to commit murder (count 1) and to commit arson (count 2).[1] Crow was sentenced to serve concurrent ten-year terms of imprisonment on each count, with eight years of each sentence to be suspended with probation. The defendant now appeals from those convictions.

1. Initially, defendant was charged by criminal information with three crimes. Count 3, which was dismissed at the request of the state, alleged that Crow had committed fifth-degree arson in violation of G.L.1956 § 11–4–6.

2. Previously, Joshua Flynn had pled *nolo contendere* to a charge of second-degree robbery. He was sentenced to a thirty-year term of imprisonment on that conviction, with twenty-two years of the sentence being suspended, with probation. At the time he shared a cell with defendant, Flynn had been accused of violating the terms of his probation after he

## FACTUAL BACKGROUND

On August 21, 1999, defendant was arrested and charged with criminal trespass and with violating a restraining order that an ex-girlfriend of his had previously obtained and which prohibited him from having any contact with her. He was then taken by the police to the Intake Center of the Adult Correctional Institutions (ACI).

At the Intake Center, defendant shared a cell for approximately ten days with Joshua Flynn. Flynn was being held at the ACI because he had been charged with possession of narcotics and with violating the probationary terms of a suspended sentence.[2]

While defendant and Flynn were incarcerated together, Flynn contacted Robert Catlow, an investigator for the Special Investigative Unit of the Department of Corrections, who was assigned to the intake service center. Flynn informed Catlow that defendant had asked him whether he knew of anyone who would be willing to kill defendant's ex-girlfriend. Investigator Catlow contacted Rhode Island State Police Detective John P. A'Vant, who was assigned to the ACI at the time, and told him about the solicitation allegation. Detective A'Vant met with Flynn on August 23, 1999, in order to devise a means to ascertain whether defendant was serious about the murder solicitation.[3]

was charged with possession of narcotics. After admitting violation of the terms and conditions of his probation, Flynn was sentenced to serve four years of the above-referenced twenty-two-year suspended sentence. The drug possession charge was ultimately dismissed.

3. Detective A'Vant testified that Flynn agreed to wear a listening device in order to record his conversations with defendant. Detective A'Vant intended to monitor all of defendant's telephone calls so that he could ascertain whether defendant would attempt to raise the necessary funds to pay someone to commit

At trial, Flynn testified that defendant had asked him to arrange for the placement of a bomb near the back door of his ex-girlfriend's place of employment. Flynn stated that Crow had told him that he wanted the bomb to be placed at his ex-girlfriend's workplace rather than at her home because he (defendant) believed that placing it in that location would draw suspicion away from him.[4] Flynn also testified that defendant had described his ex-girlfriend's appearance, her vehicle, and her place of employment, and had instructed that the bomb should be placed only after it was established that his ex-girlfriend's vehicle was parked in the adjacent parking lot. Flynn also stated that, although defendant had destroyed the diagram on which Flynn alleged that defendant had depicted the targeted building, he (Flynn) was able to reproduce the diagram from memory for Det. A'Vant at one of their meetings in the prison.

Based in large part upon Flynn's testimony, defendant was convicted on two counts of criminal solicitation. The defendant appeals the convictions on three grounds. First, he asserts that the trial justice erred in denying his motion for a new trial because the evidence was legally insufficient to support the verdicts. Secondly, he contends that the trial justice improperly instructed the jury on the issue of criminal solicitation. Finally, he maintains that the trial justice erred in admitting certain hearsay statements into evidence.

## LEGAL ANALYSIS

### 1. Motion for a New Trial

In this aspect of his appeal, defendant asserts (1) that the state's case was based entirely upon the testimony of Flynn, a fellow inmate who had a very strong motive to lie, and (2) that Flynn's testimony was susceptible of different interpretations and failed to establish that he possessed the requisite intent to commit the crimes.[5] Accordingly, he maintains that the evidence in the case was legally insufficient to support verdicts of guilt beyond a reasonable doubt and that the trial justice erred in denying his motion for a new trial.

When faced with a new trial motion, the trial justice, acting as a thirteenth juror, must independently assess the weight of the evidence and the credibility of the witnesses, drawing all reasonable inferences therefrom, in order to determine whether the evidence was sufficient for the jury to conclude that defendant was guilty beyond a reasonable doubt. *State v. Banach*, 648 A.2d 1363, 1367 (R.I. 1994); *see also State v. Mattatall*, 603 A.2d 1098, 1108 (R.I.1992) ("Even if the evidence and reasonable inferences drawn therefrom are so nearly balanced or are such that reasonable minds could arrive at

the murder. Flynn also agreed to suggest to defendant that defendant would need to produce at least $500 up front in order to engage such a person. According to Det. A'Vant, Flynn did not have an opportunity to wear the listening device because he had to be moved into another cell when his cooperation with the authorities became known to other inmates. Conversely, Flynn testified that he did not wear the listening device because "it wasn't practical" since it could be found during a pat-down search by a correctional officer.

4. Apparently, defendant wanted the bomb to be placed near the back door of the ex-girlfriend's workplace, because that door was situated near to where she usually sat when she was at work.

5. The defendant suggests that it was Flynn who solicited defendant into discussing a bomb plot so that he could trade the information with the authorities in return for leniency in his own case.

different results, the trial justice must deny the motion for a new trial.").

■ If the trial justice denies the motion after articulating an adequate rationale, the decision will be affirmed by this Court unless it is clearly wrong or unless the trial justice overlooked or misconceived evidence that was relevant and material and that was critical to an issue in the case. We summarized these principles as follows in *Banach:*

"In cases in which the trial justice has articulated a sufficient rationale for denying a motion for a new trial, the decision will be given great weight. Such a judgment will be disturbed only if the trial justice has overlooked or misconceived material evidence relating to a critical issue or if the justice was otherwise clearly wrong." *Banach,* 648 A.2d at 1367.[6]

■ The record reveals that the trial justice carefully assessed and weighed the evidence as he considered the motion for a new trial. After observing that defense counsel during cross-examination had explored the many possible motives that Flynn may have had to fabricate a story that would incriminate Crow, the trial justice nevertheless found Flynn to be "an entirely credible witness." He additionally found that the testimony given by Det. A'Vant and the employer of defendant's ex-girlfriend buttressed the testimony given by Flynn.

The trial justice specifically noted that the diagram depicting the ex-girlfriend's workplace, which Flynn had reproduced from memory when he was at the ACI, was consistent with the layout of the building as observed by Det. A'Vant and as verified by the employer of defendant's ex-

girlfriend. Furthermore, the trial justice observed that it had been established at trial that the ex-girlfriend did, in fact, work near the back door, where defendant wanted to have the bomb placed, and that she drove a vehicle consistent with the description that defendant gave to Flynn. The trial justice also noted that the ex-girlfriend's employer testified that he had observed defendant several times when defendant had visited her at her workplace. The employer further testified that Flynn was unknown to him and had never been a client of his or of his firm. The trial justice concluded that, without the information provided by defendant, Flynn would have been unable to describe and draw the layout of the ex-girlfriend's workplace or to describe her appearance and vehicle. He then stated:

"Based upon this evidence and more the jury found, and I believe properly found, that the Defendant was guilty of soliciting Joshua Flynn (and others) to commit murder and arson as alleged in Counts 1 and 2 of the Criminal Information."

The trial justice then rejected defendant's further contention that he had engaged in nothing more than idle chatter when he spoke with Flynn—that is, he rejected defendant's argument that the state had failed to prove that defendant possessed the requisite intent to solicit the crimes of murder and arson. In rejecting these assertions, the trial justice concluded as follows:

"Considering the several day period during which Crow spoke to Joshua Flynn concerning his intended plan, Defendant's drawing of the intended murder site, his description of the target, her place of employment and her vehicle, his noted pleasure when Flynn indicated

---

**6.** *See also State v. Lora,* 850 A.2d 109, 112–13 (R.I.2004); *State v. Estrada,* 537 A.2d 983, 986 (R.I.1988).

that he might have a hit man available, and the preliminary discussion of payment for the murder all confirm that the jury was well within its right to conclude that Defendant did have the specific intent to commit the crime of murder through a bombing of [the ex-girlfriend] at her place of business.

"The Court finds that the jury followed a proper charge and that the evidence was sufficient under that charge to result in the verdict rendered."

After reviewing the record, and keeping in mind the trial justice's role as a thirteenth juror, we conclude that he articulated a sufficient rationale for denying the motion for a new trial. It is our view that he did not overlook or misconceive any material evidence and was not clearly wrong. Accordingly, we affirm the denial of defendant's motion for a new trial.

## 2. The Jury Instruction

The defendant next asserts that, because the language contained in the criminal information alleged that defendant "did solicit Joshua Flynn to commit murder" and "did solicit Joshua Flynn to commit arson," the state was limited to attempting to prove that defendant specifically intended *Flynn* to commit the crimes of murder and arson. Accordingly, Crow maintains that the trial justice erroneously instructed the jury that it could find defendant guilty if it found that he "solicit[ed] another to commit, participate in, or facilitate the commission of a felony."

Rule 30 of the Superior Court Rules of Criminal Procedure specifies that "[n]o party may assign as error any portion of the charge or omission therefrom unless the party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which the party objects and the grounds of the party's objection." We have previously elaborated

upon the requirement of this particular rule as follows:

"During the course of the instructions counsel are expected to listen to the judge, noting whether their requests have been specifically fulfilled or covered by paraphrase in an adequate way * * * and to determine whether any error of omission or commission has been made. No trial justice may be expected to be endowed with that quantum of total recall which would enable him or her at the conclusion of the charge to be certain that all necessary points have been covered accurately and completely. At this point it is incumbent upon trial counsel to point out to the judge specifically and clearly those areas in which corrections or further instructions may be needed. If counsel fulfills this function, slips of the tongue or other errors may be promptly corrected before the jury begins its deliberations." *State v. Williams*, 432 A.2d 667, 670 (R.I.1981).

The requirement in Rule 30 that the objection to an instruction be made before the jury retires (and that it be made with clarity and specificity) is crucial because, once alerted to the perceived error in the instruction that has been given, the trial justice has an opportunity to cure the alleged deficiencies before the jury retires for deliberations. *See State v. Hanes*, 783 A.2d 920, 924 (R.I.2001) ("The purpose of the rule is to ensure that the trial justice is alerted to any deficiencies in the charge while there is still an opportunity for cure."); *see also State v. Brown*, 744 A.2d 831, 837 (R.I.2000); *State v. Cianci*, 430 A.2d 756, 765 (R.I.1981).

For this reason, if an objection to a jury instruction is not effectively raised below, it is waived on appeal. *See, e.g., State v. Pacheco*, 763 A.2d 971, 979 (R.I.

2001) ("We have repeatedly held that failure to object to a jury instruction precludes review of the instruction on appeal."); *State v. Bertoldi*, 495 A.2d 247, 250 (R.I.1985) (discussing the requirements of Rule 30 relative to the necessity to object to a jury instruction at the trial court level); *see also State v. Austin*, 742 A.2d 1187, 1192 (R.I.1999); *State v. Martino*, 642 A.2d 679, 681 (R.I.1994).

■ In the present case, defendant failed to make a timely and specific objection after the trial justice gave his instructions to the jury. Because Crow has not shown why he might be entitled to invoke any of the very narrow exceptions to the "raise or waive" rule,[7] we hold that the objection to the instruction which he now seeks to argue before us has been waived.

### 3. The Hearsay Objection

The defendant finally asserts that the trial justice erred in admitting testimony from Det. A'Vant concerning a conversation that he had with Investigator Catlow. The trial transcript reveals that Det. A'Vant testified, over objection, that Investigator Catlow had contacted him and told him that an inmate (Flynn) had been solicited by another inmate (Crow) to kill a third party and that Flynn had provided reliable information in the past. Crow maintains that this testimony amounted to inadmissible hearsay.

■ Hearsay is defined in Rule 801(c) of the Rhode Island Rules of Evidence as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." It is important to remember that out-of-court statements by a person other than the testifying witness do not constitute hearsay unless they are offered for the truth of the matter asserted. *State v. Gomes*, 764 A.2d 125, 131 (R.I.2001). When a statement is offered for reasons other than proving the truth of the matter asserted, it is not necessary to attempt to invoke an applicable exception to the hearsay rule for that statement to be admissible. *See In re Jean Marie W.*, 559 A.2d 625, 629 (R.I.1989) ("Statements not offered to prove the truth of what they assert are not hearsay and as such do not require the assistance of an exception to the hearsay rule in order to be admissible."); *see also State v. Grayhurst*, 852 A.2d 491, 504–05 (R.I.2004); *Wells v. Uvex Winter Optical, Inc.*, 635 A.2d 1188, 1193 (R.I. 1994).

■ In the instant case, it is evident that the purpose of Det. A'Vant's testimony about his conversation with Investigator Catlow was to demonstrate how he became involved in the continuing investigation rather than to seek to prove defendant's guilt. Detective A'Vant testified that, upon receiving the information provided to him by Investigator Catlow, he initiated an investigation into the allegation of solicitation that Flynn had made against Crow. His inquiry revealed that Flynn and Crow were sharing a jail cell at the time and that Crow had been incarcerated for violating a no-contact order. As a result, Det. A'Vant contacted Flynn in order to ascertain whether Crow was serious about soliciting a murder. Since this testimony was not offered to prove the truth of the matter (*i.e.*, that Crow in fact solicited Flynn to commit murder), it is our opinion

**7.** *See State v. Breen*, 767 A.2d 50, 57 (R.I. 2001) (holding that, for there to be an exception to the "raise or waive" rule, "the alleged error must be more than harmless, and the exception must implicate an issue of constitutional dimension derived from a novel rule of law that could not reasonably have been known to counsel at the time of trial"). The criteria delineated in *Breen* are not even remotely satisfied in the instant case.

that the trial justice did not err in overruling defendant's objection.[8]

## CONCLUSION

For the foregoing reasons, the judgment of conviction is affirmed, and the case is remanded to the Superior Court.

---

**8.** Even if Det. A'Vant's testimony were hearsay, we would find its admission to have constituted harmless error in view of its minor role in the trial when contrasted with the weight and substance of the other evidence of defendant's guilt. *See State v. Pacheco,* 763 A.2d 971, 976–77 (R.I.2001); *State v. McKone,* 673 A.2d 1068, 1075 (R.I.1996); *State v. Tatro,* 659 A.2d 106, 113–14 (R.I.1995).