**STATE**

v.

**Jacques GAUTIER.**

No. 2006–58–C.A.

Supreme Court of Rhode Island.

June 27, 2008.

See also, 774 A.2d 882; 871 A.2d 347.

Christopher R. Bush, for Plaintiff.

Catherine A. Gibran, Providence, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice SUTTELL, for the Court.

The defendant, Jacques Gautier, was convicted by a jury of second-degree murder and breaking and entering for surrep-

titiously entering his estranged wife's apartment and killing her seventeen-year-old boyfriend, Jeffrey Indellicati. At the time of Mr. Indellicati's death, Mr. Gautier and his wife were separated and there was a District Court "no-contact" order in effect as the result of a criminal charge pending against the defendant for assaulting his wife. The defendant appeals to this Court, arguing that the trial justice erred: (1) by allowing his wife's prior recorded testimony from the defendant's probation-violation hearing to be read into evidence; (2) by excluding an affidavit made by the defendant's wife in which she refuted the testimony she gave at the defendant's probation-violation hearing; (3) by admitting evidence of the recent incident of domestic assault and evidence that the defendant had used cocaine shortly after Mr. Indellicati was killed; (4) by allowing the state to bolster the credibility of its own witness; (5) by failing to give the jury an instruction on voluntary manslaughter; (6) by commenting on the evidence while giving the jury an instruction on burglary; and (7) by denying the defendant's motion to pass the case after a witness for the state misspoke. For the reasons set forth in this opinion, we affirm the judgment of conviction.

# I

## Facts and Procedural History

This Court has recited the facts of this case twice before. *See State v. Gautier,* 871 A.2d 347 (R.I.2005)*(Gautier II); State v. Gautier,* 774 A.2d 882 (R.I.2001)*(Gautier I).* As a result, we will address only briefly the facts necessary to decide this case. After his arrest for the murder of Mr. Indellicati, defendant was presented as a probation violator before the Superior Court. The defendant's wife, Minerva Gautier (Minerva), testified at defendant's probation violation hearing as follows.

Minerva testified that on the early morning of October 6, 1998, she was awakened by a noise in the kitchen of the apartment into which she recently had moved with her and defendant's twenty-two-month-old son. Minerva got out of bed to investigate and discovered defendant, who had entered the kitchen through a window. Minerva testified that defendant started to argue with her, which woke Indellicati, who had been sleeping in the nearby bedroom. When Indellicati entered the kitchen, both men began to fight. According to Minerva's testimony, defendant then grabbed a knife from a kitchen drawer and began stabbing Indellicati. The altercation moved from the kitchen and into the bathroom as the men continued to fight each other. Mr. Indellicati slipped and fell on the wet bathroom floor as defendant continued to stab him.[1] Minerva testified that after defendant stopped stabbing Indellicati she attempted to resuscitate him, but defendant ordered her at knifepoint to get the couple's son and drive him to his sister's apartment.

Noting inconsistencies in Minerva's testimony, the probation-violation-hearing justice did not find her to be a credible witness, and he stated at the conclusion of the hearing that he "was not satisfied the State met its burden [in proving] that [defendant] did murder [Indellicati]." *Gautier II,* 871 A.2d at 349. The state filed a petition for writ of certiorari, seeking review of the hearing justice's decision. We granted the petition, quashed the Superior Court judgment, and remanded the case with directions to adjudge defendant a violator. *Gautier I,* 774 A.2d at 888. The state then filed a motion to have the previ-

---

1. The chief medical examiner testified at the hearing that Indellicati suffered sixty-eight separate wounds, caused by two different knives.

ous adjudication of non-violation reconsidered, after which the same probation-violation hearing justice found defendant to be a violator.

On January 17, 2003, a grand jury returned an indictment against defendant charging him with the first-degree murder of Indellicati, burglary, kidnapping, felony assault, eluding police, and violation of a no-contact order. The defendant moved to dismiss the murder count, asserting that the state was collaterally estopped from maintaining its murder charge based upon the probation-violation hearing justice's determination at the original probation-violation hearing. His motion was denied, and defendant then filed an appeal to this Court. On appeal, we held that the state was not precluded from prosecuting defendant for murder based on the factual findings that the hearing justice made at the probation-violation hearing. *Gautier II*, 871 A.2d at 360.

The case proceeded to trial in September 2005. The trial justice granted defendant's pretrial motion to dismiss counts 3 through 6, leaving the charges of murder and burglary to be tried before a jury. On September 26, 2005, the jury found defendant guilty of the lesser-included offenses of second-degree murder and breaking and entering. The defendant filed a motion for a new trial, which the trial justice denied on October 21, 2005. On January 9, 2006, the trial justice sentenced defendant to a life sentence for second-degree murder and to a ten-year sentence for breaking and entering, to be served concurrently. Thereafter, defendant filed a timely appeal to this Court. Additional facts will be

**2.** U.S. Const. Amend. V.

**3.** R.I. Const., art. 1, sec. 13.

**4.** Rule 804(a) of the Rhode Island Rules of Evidence provides in relevant part:

discussed throughout the opinion as necessary.

## II

## Discussion

### A

### Admission of Minerva's Prior Recorded Testimony

Before the jury was impaneled, Minerva moved to quash a subpoena served upon her, asserting both her right against self-incrimination guaranteed under the federal[2] and state[3] constitutions and her common-law privilege not to be a witness against her husband. The trial justice granted the motion, and he also declared Minerva to be unavailable as a witness within the meaning of Rule 804(a) of the Rhode Island Rules of Evidence.[4] The trial justice then granted, over defendant's objection, the state's motion to introduce into evidence significant portions of the testimony Minerva had given at defendant's probation-violation hearing. At trial, the testimony was read by an assistant attorney general.

■ The defendant argues on appeal that the trial justice violated his right to confront witnesses under the Sixth Amendment to the United States Constitution and under article 1, section 10, of the Rhode Island Constitution by allowing the jury to hear the prior recorded testimony of Minerva from defendant's probation-violation hearing. He also asserts that such

"(a) *Definition of Unavailability.* 'Unavailability as a witness' includes situations in which the declarant—
 "(1) is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of the declarant's statement * * *."

testimony did not qualify for admission under Rule 804(b)(1).[5]

■ We first consider defendant's constitutional argument. It is well settled that "issues that were not preserved by a specific objection at trial, 'sufficiently focused so as to call the trial justice's attention to the basis for said objection, may not be considered on appeal.'" *State v. Pacheco*, 763 A.2d 971, 976 (R.I.2001) (quoting *State v. Bettencourt*, 723 A.2d 1101, 1107 (R.I.1999)). At trial, defendant raised two objections to Minerva's probation-violation-hearing testimony. The defendant first stated that he was not given "a significant or satisfactory amount of evidence" through discovery to have "a real opportunity to develop the testimony of Ms. Gautier" by cross-examination as required by Rule 804(b)(1). Secondly, he argued that the testimony Minerva offered at defendant's probation-revocation hearing did not bear "the appropriate guarantees of reliability and/or trustworthiness." Because defendant failed to raise a constitutional challenge to the admission of Minerva's previous testimony, we deem the argument waived.

■ Turning to defendant's argument that Minerva's testimony was admitted in violation of Rule 804(b)(1), this Court has held that "[t]he decision as to whether or not to admit former testimony lies in the sound discretion of the trial justice, and we will not overturn such a decision unless there has been an abuse of that discretion." *State v. Day*, 925 A.2d 962, 979–80

(R.I.2007) (citing *State v. Sharp*, 708 A.2d 1328, 1330 (R.I.1998)).

Mr. Gautier contends that he did not have a meaningful opportunity to cross-examine Minerva at the violation hearing because the amount of discovery available at that time "was very, very little compared to the volumes of materials amassed by trial time." He was thus unable to cross-examine Minerva relative to statements from two police detectives and from a prison informant that differed from her account "in several important ways." In addition, defendant argues that a "substantial *identity of issues* simply does not exist between a violation hearing and a full-blown criminal trial."

Rule 804(b)(1) does not exclude as hearsay evidence the previous recorded testimony of an unavailable witness if the party against whom the admission is sought was afforded an opportunity to develop the testimony through direct, cross-, or redirect examination.

■ This Court adheres to "the so-called 'liberal' rule when determining the adequacy of prior opportunities to cross-examine witnesses." *Day*, 925 A.2d at 980. Under this rule, "it is required only that there be a *substantial* identity of issues and of parties before former testimony will be deemed admissible." *Id.; see also State v. Ouimette*, 110 R.I. 747, 757, 298 A.2d 124, 131 (1972). We reject defendant's suggestion that an identity of issues cannot exist between a probation-violation hearing and a criminal trial. To be sure, the two proceedings serve very different

---

**5.** Rule 804(b)(1) provides:

"(b) *Hearsay Exceptions.* The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

"(1) *Former Testimony.* Recorded testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a party with similar motive and interest had an opportunity to develop the testimony by direct, cross, or redirect examination."

purposes. A probation-violation hearing is a civil proceeding to determine whether a probationer has kept the peace and been of good behavior, or otherwise violated a condition of probation, *see State v. Piette*, 833 A.2d 1233, 1237 (R.I.2003); whereas a criminal trial is "the intended forum for ultimate determinations as to guilt or innocence of newly alleged crimes." *Gautier II*, 871 A.2d at 359 (quoting *Lucido v. Superior Court*, 51 Cal.3d 335, 272 Cal. Rptr. 767, 795 P.2d 1223, 1230–31 (1990)). Nevertheless, in this case the alleged violation and the murder charge related to the same sequence of events concerning defendant's involvement in the death of Jeffrey Indellicati. *See Day*, 925 A.2d at 981; *see also Bertrand v. State*, 363 Ark. 422, 214 S.W.3d 822, 824 (2005) (admitting former testimony from a suppression hearing); *People v. Zapien*, 4 Cal.4th 929, 17 Cal. Rptr.2d 122, 846 P.2d 704, 729 (1993) (admitting former testimony from a preliminary hearing); *Ward v. State*, 910 S.W.2d 1, 3 (Tex.Ct.App.1995) (admitting former testimony from a bond hearing).

Furthermore, we agree with the trial justice that defendant was afforded a full and adequate opportunity to cross-examine Minerva at the probation-violation hearing. As the trial justice noted, defendant cross-examined her so effectively that the probation-violation-hearing justice found her testimony to be inconsistent and lacking credibility. The fact that defendant may have obtained more information through discovery by the time of trial does not undermine the adequacy of his opportunity to cross-examine the witness at the probation-violation hearing. Moreover, at trial defendant acknowledged that the hearing justice did not limit his cross-examination in any way. Based upon our review of the record, we are satisfied defendant was given an adequate opportunity to cross-examine Minerva at the probation-violation hearing, and that the trial justice did not abuse his

discretion by admitting into evidence under Rule 804(b)(1) her redacted prior recorded testimony.

## B

### Exclusion of Minerva's Recantation

■ On August 17, 1999, Minerva gave a statement in affidavit form to an investigator in the Public Defender's Office in which she essentially recanted the testimony she gave at defendant's probation-violation hearing. In her statement she said she found Indellicati on the floor of her bathroom when she arrived home around midnight. She performed CPR and asked him if he was all right. After he said that he was, Minerva left to find defendant to enlist his help. When the two returned to Minerva's apartment, Indellicati no longer was alive. She said in the statement that she later was arrested and brought to the police station, where she was stripped of her clothes, given plastic to put over her, and treated "like a caged animal" from 7 a.m. to 3 p.m. until she finally told the police that she had seen defendant stab Indellicati three times.

On September 15, 2005, three days after the trial justice allowed the state to introduce Minerva's probation-violation-hearing testimony and one day after the jury was impaneled and sworn, defendant sought to introduce the affidavit under Rule 806 of the Rhode Island Rules of Evidence to attack her credibility. The trial justice denied defendant's motion, concluding that Minerva's affidavit was not the type of statement the drafters of Rule 806 envisioned being used for impeachment purposes. The trial justice also was concerned whether the statement was made freely and voluntarily, and he was particularly irked that defendant failed to produce the statement until after the jury had been sworn.

It is well settled that "this Court will not disturb a trial justice's ruling on an evidentiary issue unless that ruling 'constitutes an abuse of the justice's discretion that prejudices the complaining party.'" *State v. Gomez*, 848 A.2d 221, 232 (R.I.2004) (quoting *State v. Dellay*, 687 A.2d 435, 439 (R.I.1996)).

A party's ability to attack the credibility of a declarant is governed by Rule 806. Rule 806 states:

"**Attacking and supporting credibility of declarant.**—When a hearsay statement, or a statement defined in Rule 801(d)(2), (C), (D), or (E), has been admitted in evidence, the credibility of the declarant may be attacked, and if attacked may be supported, by any evidence which would be admissible for those purposes if declarant had testified as a witness. Evidence of a * * * [statement] or conduct by the declarant at any time, inconsistent with the declarant's hearsay statement, is not subject to any requirement that the declarant may have been afforded an opportunity to deny or explain. If the party against whom a hearsay statement has been admitted calls the declarant as a witness, the party is entitled to examine the declarant on the statement as if under cross-examination."

By its terms, Rule 806 permits a party to impeach the credibility of a declarant of a hearsay statement "by any evidence which would be admissible for those purposes if declarant had testified as a witness." In denying defendant's motion the trial justice said that he was concerned about the authenticity of the affidavit. He also noted that the statement purportedly was written after defendant had been released from incarceration; thus, he said, the possibility existed that Minerva did not make the statement "freely and voluntarily."

It is our opinion that the trial justice did not abuse his discretion by excluding Minerva's affidavit. On the contrary, we are convinced that he appropriately was concerned about the circumstances surrounding the preparation of the six-year-old statement that contradicted not only Minerva's prior testimony at the probation-violation hearing, but also her subsequent testimony before the grand jury. Although we agree with defendant that Rule 806 "levels the playing field" between live witnesses and non-testifying hearsay declarants by allowing the introduction of impeaching evidence to attack or support the latter's credibility, we do not read Rule 806 as superseding other rules of evidence. *See United States v. Rosario*, 111 F.3d 293, 296 (2d Cir.1997) ("Rule 806 does not overcome the Rule 410 objection if the statements being offered were obtained in a proffer session and they are being offered against the person who made the proffer."); *United States v. Finley*, 934 F.2d 837, 839 (7th Cir.1991) ("Rule 806 extends the privilege of impeaching the declarant of a hearsay statement but does not obliterate the rules of evidence that govern how impeachment is to proceed."); *State v. Chaney*, 989 P.2d 1091, 1102 (Utah Ct.App.1999) ("Regardless of the applicability of Rule 806, the affidavit had to meet basic foundational and reliability requirements. Authentication or identification of evidence is 'a condition precedent to admissibility.'").

Here, the trial justice, in the performance of his discretionary, gate-keeping functions, expressed concerns about basic foundational requirements concerning the proffered affidavit. Rule 901(a) of the Rhode Island Rules of Evidence [6] requires

---

6. Rule 901(a) of the Rhode Island Rules of Evidence provides: "(a) *General Provision.*

that evidence be properly authenticated and identified as a "condition precedent to admissibility." The admissibility of evidence to attack or support a hearsay declarant under Rule 806 is not unrestricted; it is subject to the condition that such evidence "be admissible for those purposes if declarant had testified as a witness." In the case at bar, the trial justice made clear that he would not have allowed Minerva's affidavit into evidence, even if Minerva had testified, without "some kind of foundation." We are satisfied that his ruling was a sustainable exercise of his ample discretion in evidentiary matters.

■ As a second ground for excluding Minerva's affidavit from the evidence, the trial justice found that defendant violated Rule 16 of the Superior Court Rules of Criminal Procedure by not producing the affidavit to the state until after the jury had been sworn. We agree, although we do so for a different reason than that the trial justice expressed.

The defendant argues that Minerva was at all times a potential witness for the state. Thus, he was under no obligation to disclose her name under Rule 16(b)(4) as a person whom he expects to call as a witness, nor was he required to produce her affidavit under Rule 16(b)(5).[7] The trial justice concluded, however, that:

> "there was a good chance that she was going to testify not favorable to the

State but, rather, favorable to the defense. And so, even if, in fact, she was not listed as a defense witness and, in fact, she still was listed as a State's witness, we're into that gray area where she could have almost been both sides' witness. And it seems to me that the spirit of Rule 16, that at some point at least prior to the swearing in of the jury, which caused jeopardy to attach, that the defense would have made this affidavit known to the State."

■ Although we agree with defendant that Minerva's statement was not discoverable under Rule 16(b)(5), we are of the opinion that defendant was obligated to produce it under Rule 16(b)(1), which requires a defendant to produce "all books, papers, documents, photographs, sound recordings or copies thereof, or tangible objects, buildings, or places which are intended for use by the defendant as evidence at the trial."

There can be little doubt that from the moment the trial justice declared Minerva to be unavailable as a witness and allowed her prior recorded testimony to be read into the record, defendant intended to introduce Minerva's affidavit at the trial. As the trial justice noted, by not disclosing the document for three days until after the jury had been sworn and jeopardy had attached, defendant "prohibited the State

---

The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."

7. Rule 16(b)(5) of the Superior Court Rules of Criminal Procedure provides:

> "(b) *Discovery by the State.* A defendant who seeks any discovery under subdivision (a) of this rule shall permit the State, upon receipt of written request, to inspect or listen to and copy or photograph any of the following items within the possession, cus-

tody or control of the defendant or the defendant's attorney:

> " * * *
>
> "(5) as to those persons other than the defendant whom the defendant expects to call as witnesses at the trial, all written or recorded verbatim statements, signed or unsigned, of such persons and, if no such statement of a witness is in the possession of the defendant, a summary of the testimony such person is expected to give at the trial."

from appealing [the] ruling with regard to the spousal privilege."

It is our opinion, therefore, that the trial justice did not abuse his discretion in excluding Minerva's affidavit because of defendant's discovery violation, albeit we do so on grounds other than those specifically relied upon by the trial justice. *See Shepard v. Harleysville Worcester Insurance Co.*, 944 A.2d 167, 170 (R.I.2008) ("[W]e are free to affirm on grounds other than those relied on by the trial justice.").

## C

### Evidence of Other Misconduct

Over the course of the trial the state was allowed to introduce evidence concerning an incident of domestic assault involving defendant and Minerva that occurred eight days before the murder and which resulted in an order prohibiting defendant from contacting Minerva. Such evidence was introduced through Minerva's recorded testimony, as well as the testimony of Wilfred Dumont, a jailhouse informant, Patrolman Anthony Teixeira, Jr., the arresting officer, and Jerome Smith, chief clerk of the District Court. In addition, Dumont testified Gautier told him that after Indellicati was killed that he (Gautier) "was doing coke, snorting coke" at his sister's house. On appeal, defendant contends the admission of such evidence of misconduct constitutes reversible error.

▇▇▇ The defendant concedes that evidence of a no-contact order clearly was relevant to the charge that he burglarized his wife's apartment. He maintains, however, that the facts underlying the no-contact order, *i.e.*, the domestic assault, were not relevant to either the burglary or murder charge and, even if they were marginally relevant, such facts were unfairly prejudicial.

▇▇▇ This Court has stated that "[t]he admissibility of evidence is within the sound discretion of the trial justice, and this Court will not interfere with the trial justice's decision unless a clear abuse of discretion is apparent." *State v. Brown*, 900 A.2d 1155, 1159 (R.I.2006) (quoting *State v. Mohapatra*, 880 A.2d 802, 805 (R.I.2005)). "It is well settled law both that evidence of a defendant's bad character or criminal disposition may not be admitted to prove his or her propensity to commit crime, and that several important exceptions exist alongside this principle." *Id.* at 1160 (quoting *State v. Baptista*, 894 A.2d 911, 914–15 (R.I.2006)).

▇▇▇ Rule 404(b) of the Rhode Island Rules of Evidence provides the framework for the admissibility of evidence concerning other crimes and misconduct:

> "*Other Crimes, Wrongs, or Acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or to prove that defendant feared imminent bodily harm and that the fear was reasonable."

Rule 404(b) evidence may also be admitted when "admitting the evidence allows 'a trier of fact to hear a complete and, it is to be hoped, coherent story so as to make an accurate determination of guilt or innocence.'" *Brown*, 900 A.2d at 1161 (quoting *State v. Parkhurst*, 706 A.2d 412, 424 (R.I.1998)). Also, "if the prior incidents are interwoven with the charged offense they are admissible." *State v. Gomes*, 690 A.2d 310, 316 (R.I.1997). "In any event, drug use and addiction are topics that should be handled with sensitivity to avoid

undue and unnecessary prejudice." *State v. D'Alessio*, 848 A.2d 1118, 1125 (R.I. 2004).

Based on our review of the record, we perceive no error in the trial justice's rulings concerning the incident of domestic assault. In overruling defendant's objection to portions of Minerva's recorded testimony in which she refers to the domestic assault, the trial justice said:

"And so, what I have here is a situation where the witness has testified as to this assault having taken place about a week before the incident for which he is charged, and it seems to me that information can come before the jury not to show that he's a bad person or to show that because he may have done something in the past he, therefore, did what he's been charged in this indictment, but, rather, to show that there was a motive or a reason for him to have done what he did that night. He was angry with his wife. As a result of his anger with his wife, this assault takes place."

The testimony of Dumont, the jailhouse informant, suggested that defendant had planned the break-in carefully. According to Dumont, defendant said he had unlocked a window in Minerva's apartment earlier in the day "because he wanted to break in later to see whether Minerva was cheating on him." Mr. Gautier also told Dumont that when he returned by cab, he got out "up the street" from Minerva's apartment so that he wouldn't be seen there. He then proceeded to the apartment and climbed through the kitchen window he had unlocked earlier that day.

We conclude that the trial justice did not abuse his discretion by allowing evidence of the previous domestic assault into evidence. Moreover, we note that the trial justice gave adequate cautionary instructions on several occasions.[8] The defendant also has failed to demonstrate that the probative value of such evidence was substantially outweighed by the danger of unfair prejudice under Rule 403 of the Rhode Island Rules of Evidence.

■ So, too, we are satisfied the trial justice did not abuse his discretion when he admitted testimony from Patrolman Teixeira that on the morning of defendant's arrest, Officer Teixeira recognized both defendant and his automobile from the previous domestic assault incident. The trial justice ruled the testimony relevant with respect to the issue of defendant's identity and gave an appropriate limiting instruction to the jury.

■ With regard to the testimony about defendant's drug use after the murder, the state contends that the evidence was admitted to fill holes in the chronology of events, specifically the time between defendant's arrival at his sister's house and his apprehension by the police. After the testimony was elicited, defendant asked for a cautionary instruction, to which the trial justice agreed, stating "[a]nd to the extent that you decide to consider this evidence, it is admitted for

---

**8.** On four occasions during the reading of Minerva's testimony, the trial justice warned the jurors:

"[T]o the extent that the witness, Minerva Gautier, testified that on other occasions, the defendant engaged in other untoward conduct, bear in mind that he has not been charged with any such untoward conduct or alleged misconduct, and you may not draw the inference that the defendant committed the criminal offenses he is on trial for simply because on other occasions, he may have acted improperly.

"To the extent that you decide to consider this evidence, it is admitted for your consideration for the limited purpose as it may relate to the defendant's motive, intent or plan with regard to the offenses for which he is presently on trial. You may not consider this evidence for any other purpose."

your consideration for the limited purpose as it may relate to the defendant's motive, intent or plan with regard to the offenses for which he's presently on trial and you may not consider this evidence for any other purpose." Thereafter, defendant neither objected to the instruction nor did he request a mistrial. Having asked for, and received, an appropriate cautionary instruction, defendant has no basis for arguing reversible error on appeal. Accordingly, we perceive no error in the trial justice's evidentiary rulings.

## D

### Bolstering the Testimony of Wilfred Dumont

■ The defendant argues that the trial justice erred in allowing the state to unfairly and repeatedly bolster the credibility of Wilfred Dumont, a jailhouse informant. The defendant asserts that the state repeatedly emphasized the witness's obligation to tell the truth as part of the cooperation agreement, thereby vouching for his credibility.

■ Vouching occurs when "the government says or insinuates that it has 'special knowledge' that its witness is testifying truthfully." *State v. Chakouian*, 537 A.2d 409, 412 (R.I.1988). Vouching can also occur "if the prosecution 'place[s] the prestige of the government behind the witness * * *.'" *Id.* (quoting *United States v. Roberts*, 618 F.2d 530, 533 (9th Cir. 1980)).

■ To preserve evidentiary objections for review on appeal the objection must be "sufficiently focused so as to call the trial justice's attention to the basis for said objection." *State v. Brown*, 709 A.2d 465, 477 (R.I.1998) (quoting *State v. Toole*, 640 A.2d 965, 972 (R.I.1994)). " '[A]llegations of error committed at trial are considered waived if they were not *effectively*

raised at trial, despite their articulation at the appellate level.' " *Id.* (quoting *Toole*, 640 A.2d at 973).

Our review of Dumont's testimony shows that defendant objected to the questioning six times. The defendant did not raise vouching objections each time, but instead made two objections based on the form of the questions, both of which were overruled. Another of the objections defendant made was that the state was leading the witness. This objection was sustained. Notably, the two vouching objections defendant made either were sustained or effectively sustained. The first objection for vouching was sustained by the trial justice and the second objection was not ruled upon by the trial justice because he, instead, did not allow Dumont to answer, and ended the trial for the day. The defendant did not object to the trial justice's handling of this objection. We are satisfied the trial justice did not commit reversible error in this regard.

■ The defendant also argues that the trial justice erred by allowing Dumont to improperly insinuate that he had held up his end of the bargain to tell the truth when he implied that the prosecutor had written a letter on his behalf to the Parole Board. Thus, according to defendant, "the prosecutor indirectly shored up his testimony by effectively portraying the state as the guarantor of the witness's credibility." We fail to see, however, how this argument has been preserved. The transcript reflects that defendant made two objections to this line of questioning, both of which were sustained.

## E

### Voluntary Manslaughter Instruction

The defendant next argues that the trial justice committed prejudicial error by failing to instruct the jury on the lesser-

included offense of voluntary manslaughter. The defendant argues that the evidence allowed a rational jury to conclude that he killed Indellicati in the heat of sudden passion, "upon discovering, first-hand, his wife's extramarital affair." The state, however, maintains that even if defendant were entitled to a jury instruction on voluntary manslaughter, he waived this objection at trial. We agree.

This Court has held that "[a] defendant charged with a crime 'is entitled to instructions that explain those propositions of law that relate to material issues of fact that the evidence supports.'" *State v. Ortiz*, 824 A.2d 473, 485 (R.I.2003) (quoting *State v. Fetzik*, 577 A.2d 990, 996 (R.I. 1990)). As a result, "[a] defendant is entitled to an instruction on a lesser-included offense when the evidence produced at trial justifies such an instruction." *State v. Ruffner*, 911 A.2d 680, 685–86 (R.I.2006). "The trial justice, however, should not instruct the jury on a lesser-included offense when the evidence wholly fails to support such a charge." *State v. McGuy*, 841 A.2d 1109, 1112 (R.I.2003). "In determining whether the evidence calls for a lesser-included-offense instruction, the trial justice should not weigh the credibility of the testimony; rather, he or she should consider whether, at the very least, some minimal evidence exists that, if credited by the jury, could support a conviction for the lesser-included offense." *Id.*

When determining whether a trial justice's refusal to instruct on a lesser-included offense was proper, "this Court examines the record to determine whether adequate evidence was introduced to merit a jury instruction on the lesser-included offense." *State v. Garcia*, 883 A.2d 1131, 1137 (R.I.2005). "In undertaking this *de novo* review, the role of this Court is limited to 'ascertaining whether an actual and adequate dispute exists as to the distinguishing element between the lesser and greater offenses in question.'" *State v. Motyka*, 893 A.2d 267, 281 (R.I.2006) (quoting *Garcia*, 883 A.2d at 1137). "When there is no such dispute, our review is at an end." *Garcia*, 883 A.2d at 1137.

In the case at bar, after the trial justice read the instructions to the jury, defendant objected to the absence of a voluntary-manslaughter charge. In making his argument, defendant stated that the facts in his case were similar to the facts of *Ortiz*, 824 A.2d at 473, because the facts in *Ortiz* were considered "almost an imperfect self defense." [9] The defendant argued:

> "I will alert the court to *State v. Pedro Ortiz* found at 824 A.2d 473. The facts of that case are very similar to the facts of the case here. In *Ortiz*, your Honor, the defendant came upon a person who struck him first. Mr. Ortiz, your Honor, had a board with a nail in it and he proceeded to hit him in the head. At some point, a struggle ensued and during the course of the struggling, there was chasing going on, and Mr. Ortiz bludgeoned the decedent in that case to death, your Honor, using a board with nails on it. I believe they needed fingerprints to identify who the decedent was. In that case, it was proper, as the Supreme Court said, based on

---

**9.** "[T]he doctrine of imperfect self-defense 'purports to reduce the crime of murder to voluntary manslaughter.' * * * It is based on the underlying theory that 'when a defendant uses deadly force with an honest but unreasonable belief that it is necessary to defend himself, the element of malice, necessary for a murder conviction, is lacking." *State v. Linde*, 876 A.2d 1115, 1129 (R.I.2005) (quoting *State v. Catalano*, 750 A.2d 426, 429 (R.I. 2000)).

the facts of almost an imperfect self defense or just based on the fact that they found voluntary manslaughter should have been given * * *."

In *Ortiz*, this Court held that the defendant was not entitled to a jury instruction on involuntary manslaughter because the killing was not imperfect self-defense as he argued and, even if the defendant had acted in imperfect self-defense, the defendant would not be entitled to an involuntary manslaughter instruction because the killing still would be voluntary. *Ortiz*, 824 A.2d at 484, 487–88.

■ We need not comment on this argument, however, because defendant does not raise the "imperfect self-defense" argument on appeal. Instead, defendant argues that the killing was committed in "the heat of passion" because defendant caught his wife committing adultery, thus confirming his suspicion that she had been cheating on him. Rule 30 of the Superior Court Rules of Criminal Procedure provides in part: "No party may assign as error any portion of the charge or omission therefrom unless the party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which the party objects and the grounds of the party's objection." "The purpose of Rule 30 is to notify the trial justice, with clarity and specificity, of any deficiencies in the charge so that the alleged error may be cured before the jury retires for deliberations." *State v. Brown*, 898 A.2d 69, 83 (R.I.2006). As a result, "if an objection to a jury instruction is not effectively raised below, it is waived on appeal." *State v. Crow*, 871 A.2d 930, 935 (R.I.2005).

In the present case, defendant failed to make the same objection that he makes before this Court after the trial justice gave his instructions to the jury. As a result, we hold that the objection to the jury instructions that defendant now raises on appeal has been waived.

## F

### Burglary Instructions

■ The defendant next argues that the trial justice committed reversible error during his instructions to the jury about the criminal offense of burglary. More specifically, defendant contends that the trial justice unfairly commented on the evidence during the jury instruction by zeroing in on particular facts that members of the jury could consider in making their determination.

■ The standard of review for jury instructions is well settled. "The charge given by a trial justice need only 'adequately cover[ ] the law.'" *State v. Krushnowski*, 773 A.2d 243, 246 (R.I.2001) (quoting *State v. Grundy*, 582 A.2d 1166, 1170 (R.I.1990)). "As long as the instructions 'neither reduce nor shift the state's burden of proof' we sustain the trial justice's charge as given." *State v. Hazard*, 797 A.2d 448, 469 (R.I.2002) (quoting *Krushnowski*, 773 A.2d at 246). "On review, we examine the instructions in their entirety to ascertain the manner in which a jury of ordinary intelligent lay people would have understood them." *Krushnowski*, 773 A.2d at 246. "[W]e review challenged portions of jury instruction 'in the context in which they were rendered.'" *Id.* (quoting *State v. Gordon*, 508 A.2d 1339, 1349 (R.I.1986)).

The state argues that the court's instruction cannot be interpreted as commenting on the weight of the evidence. The defendant, however, states that when the trial justice was giving the jury a list of evidence to consider when determining whether the element of "dwelling of another" was satisfied, the trial justice only noted evidence favorable to the state and

left out important evidence in his favor, such as the fact that defendant's name was on the lease to Minerva's apartment.[10] By providing the jury with this "laundry list" of evidence to consider, defendant contends, the trial justice improperly invaded the province of the jury by commenting on the weight that should be given to the evidence. The defendant further maintains the trial justice essentially gave a preemptory instruction on a required element of the crime of burglary. We disagree.

◼ The trial justice's instructions stated clearly that the state bore the burden of proof and had the responsibility of proving each element of every crime beyond a reasonable doubt. Additionally, when giving the instruction on the lesser-included offense of breaking and entering, the trial justice highlighted evidence that the jury "may consider." "It is unquestioned that a trial justice has a duty to ensure that the jury is not influenced in its factfinding by what it believes to be the opinion of the court." *State v. McKee*, 442 A.2d 440, 443 (R.I.1982). The trial justice did not state that any of the evidence was trustworthy, nor did he state that the evidence listed was the only evidence the jury could consider on that point. Merely listing evidence that the jury could consider without commenting more does not persuade jurors by suggesting what is the opinion of the court.

◼ Turning now to defendant's contention that the trial justice erred by failing to mention that defendant's name was on the lease for Minerva's apartment, we find that this argument is waived because defendant failed to object to the omission below. *See Crow*, 871 A.2d at 935. Accordingly, we perceive no error concerning the trial justice's jury instructions.

## G

### Motion to Pass

◼ The defendant's final contention on appeal is that the trial justice erred by not granting his motion to pass the case when the chief clerk of the District Court misspoke while testifying. The chief clerk had been called as a witness by the state. When asked by the prosecutor "[w]hat was the charge against Mr. Gautier in that case?", the chief clerk, with a District Court file folder in hand, responded, "The case has a number of charges in it, prior charges, prior dates." The defendant immediately objected and requested a sidebar conference, at which he pressed for a mistrial. According to defendant, the jury could not be expected to disregard the testimony of unspecified other charges, particularly since the information had been

---

10. The trial justice's jury instructions on the critical issue of "dwelling of another" are in part as follows:

"The traditional term for a residence is a dwelling, dwelling house. A dwelling house refers to a person's home. That is to say, any habitable building or place, whether it be a house or an apartment. The State does not have to prove who actually owned the residence. It merely has to establish to your satisfaction that the defendant was not entitled to be in the residence at the time the burglary occurred. The uninvited entry of an estranged spouse into the residence of the other spouse may constitute an unlaw-

ful entry even if the spouse accused of burglary had an ownership interest in the residence.

"Factors you may consider in determining whether a break occurred into the dwelling house of another are: One, was there a valid no contact order between the defendant and Minerva Gautier; two, did the defendant have possession of the premises; three, was the defendant living in the premises on a regular basis; four, did the defendant have personal possessions on the premises; five, did the defendant have a key to the premises?"

given by a witness cloaked with the authority conveyed by his very title.

After a brief discussion, the trial justice asked the parties to research the issue, and he recessed the trial for lunch. During the break, the chief clerk reviewed the District Court file and determined that it contained only a single charge, specifically the previously discussed domestic assault charge. After the luncheon recess, the trial justice determined the witness simply had made a mistake, and he did not find "that what was stated to the jury so inflamed them that they cannot disregard it with a proper cautionary instruction." The trial justice, therefore, denied defendant's motion to pass. When the trial resumed, the chief clerk corrected his earlier testimony and the trial justice gave a cautionary instruction. On appeal, defendant continues to maintain that such remedial measures "were insufficient to dispel the prejudicial taint of the clerk's offending testimony."

 This Court traditionally has assigned great weight to the decision of a trial justice to pass a case *vel non*. We consistently have held that "a trial justice's decision on a motion to pass the case is addressed to the sound discretion of the trial justice, and this Court will not disturb the ruling on such a motion absent an abuse of discretion." *State v. Bolduc,* 822 A.2d 184, 186 (R.I.2003). "When considering a motion for a mistrial, a trial justice assesses the prejudicial impact of the statement(s) or the event in question on the jury and determines whether 'the evidence [is] of such a nature as to cause the jurors to become so inflamed that their attention [is] distracted from the issues submitted to them." *Id.* (quoting *Pacheco,* 763 A.2d at 979). "We accord the trial justice's determination great deference because 'he or she possesses a "front-row" seat at the trial and can best determine

the effect of the improvident remarks upon the jury.'" *Pacheco,* 763 A.2d at 979 (quoting *State v. Figueroa,* 673 A.2d 1084, 1091 (R.I.1996)). "Not all potentially prejudicial statements or other disturbing events that occur during a trial require the trial justice to pass the case." *Bolduc,* 822 A.2d at 186. "Even a prejudicial remark, however, does not require the granting of a motion to pass." *Pacheco,* 763 A.2d at 979.

After reviewing the trial proceedings, as well as the parties' arguments, it is absolutely clear to us that the trial justice did not abuse his discretion by denying defendant's motion to pass. After a brief sidebar conference, he recessed the trial so that the parties could research the issue more. He then engaged in a long discussion with counsel, outside the presence of the jury, in which he considered the current stage of the proceedings and the circumstance that the witness whose testimony was at issue was the chief clerk of the District Court, with twenty years of experience. He then reviewed the appropriate standard for considering a motion to pass, concluding:

> "I would feel that the proper mechanism to take is for the—perhaps the testimony of the witness as to what he brought with him today to be stricken, that the new question posed showing the mistake that was made, the court will then instruct the jury that what they heard this morning with regard to charges was—is to be disregarded by them for the ability to unring a bell as per their oath, they shouldn't maybe make any references to it and it should be disregarded.
>
> "And it seems to me under the circumstances, that should solve any problems that are related."

We conclude that the trial justice made a thoughtful determination well within his discretionary authority.

## III

### Conclusion

For the reasons stated in this opinion, we affirm the judgment of conviction entered in the Superior Court. The record may be returned to the Superior Court.