STATE

v.

**David RIOS.**

**No. 2007–131–C.A.**

Supreme Court of Rhode Island.

June 16, 2010.

Jane M. McSoley, Esq., Department of Attorney General, for Plaintiff.

Arthur E. Chatfield, Esq., Providence, for Defendant.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, and ROBINSON, JJ.

## OPINION

Chief Justice SUTTELL, for the Court.

A jury found the defendant, David Rios, guilty of murder, kidnapping with intent to extort, conspiracy to commit kidnapping, and the commission of a crime of violence with a firearm. The defendant's sole issue on appeal is whether the trial justice erred in permitting two witnesses to testify that they observed the defendant in possession of a handgun on several occasions prior to the murder. For the reasons set forth in this opinion, we affirm the Superior Court's judgment of conviction.

## I

### Facts and Travel

At approximately 8 p.m. on February 16, 2000, Moniroath Keo was watching television with his family at his home when his quiet evening was interrupted by a loud banging at his front door. Fearing that the late-night caller was intoxicated, Mr. Keo refused to open the door, and instead he called the police. As he placed the telephone call, he looked out a window and observed a man running to the house next door. The man came back, however, and rushed at Mr. Keo's front door, kicking in the door about an inch. As Mr. Keo struggled to keep the door closed, he heard several gunshots. Mr. Keo's son, who was eleven years old at the time of the incident, testified at trial that he observed a second man appear and shoot the would-be intruder twice in the head. The shooter then fled.

When the police arrived shortly thereafter, they discovered the body of a young man on the front steps of the Keo home, lying in a pool of blood. One of the man's legs protruded into the broken door frame and his hands were handcuffed behind his back. The police were able to identify the victim as William Sanchez from an identification card on his body. A neighbor directed the police to the Veazie Street School field across the street, where they found a large pool of blood, footprints, and a .40–caliber shell casing.[1]

---

1. The murder weapon was never found. However, the shell casing found in the Veazie

On February 23, 2000, defendant was charged with murder, murder while in the perpetration of a kidnapping,[2] kidnapping with intent to extort, conspiracy to commit kidnapping, and commission of a crime of violence with a firearm. Before trial began, defendant submitted a motion *in limine* seeking to preclude two witnesses from testifying "that [d]efendant was observed in possession of a handgun" prior to the day on which Sanchez was slain. The defendant argued that such testimony constituted evidence of prior bad acts that was inadmissible under Rule 404(b) of the Rhode Island Rules of Evidence. The hearing justice denied the motion and proceeded to empanel a jury.

At trial, Danny Jimenez, who was separately convicted of kidnapping with intent to extort and conspiracy to commit kidnapping after pleading nolo contendere with respect to his conduct on the night of Sanchez's murder, testified for the state.[3] Jimenez testified that he met defendant between six and eight months before the murder. Of particular import to this appeal, he described defendant as frequently carrying a handgun.[4]

Mr. Jimenez testified that on February 16, 2000, defendant drove to Jimenez's house with another man, Sergio Salazar. Jimenez said that he entered the back seat of defendant's automobile and the three men drove around for at least forty-five minutes, smoking marijuana and drinking alcohol. They then drove to a residence identified as "Alex's house."[5] The defendant and Salazar went inside and shortly thereafter emerged with Sanchez. Salazar opened the left back-seat door for Sanchez, and the group drove to the Veazie Street School field, at which point defendant told everyone to get out of the car. Jimenez noticed that a coat was draped over Sanchez, concealing his hands. According to Jimenez, throughout the drive defendant had been berating Sanchez about an outstanding debt. Sanchez pleaded for more time to come up with the money. Jimenez testified that he initially believed defendant was simply trying to frighten Sanchez, but he grew apprehensive when he observed defendant point a gun at Sanchez. Jimenez testified that he unsuccessfully tried to dissuade defendant from further violence and attempted to leave when defendant turned the gun on Jimenez and ordered him to stay. Moments later defendant shot Sanchez. Jimenez, Salazar, and defendant initially ran to their car and fled the scene, but after several minutes they returned to the area. Jimenez testified that as he stood in the field, he watched defendant run up to Sanchez, who at the time was kicking at the door of a white house. He then observed defendant shoot Sanchez twice.

Kristen Lemoine, who described herself as a motherly figure in Sanchez's life, also testified at trial and offered a motive for the killing. She indicated that Sanchez had agreed to pay a debt owed to defen-

---

Street School field matched the casings found outside the Keo residence.

**2.** This charge eventually was dismissed pursuant to Rule 48(a) of the Superior Court Rules of Criminal Procedure.

**3.** Jimenez received no special treatment from the state in exchange for his testimony; indeed, he declined its offer of a lesser sentence in exchange for his cooperation as a witness for the state.

**4.** Immediately following this testimony, the trial justice issued a limiting instruction to the jury, reminding it to consider the evidence only "[t]o the extent it bears on the defendant's intentions, his knowledge, or identity, and his plan."

**5.** Alex was identified only as a friend of defendant.

dant by Sanchez's uncle.[6]   She also said that, several months earlier, she had been present when defendant and Sanchez had gotten into a heated argument over payment of that debt, during which defendant brandished a gun.   Lemoine testified that when she asked defendant to put away his gun out of concern for her daughter, he responded that he "[didn't] give a s* *t about me, my daughter, or anybody, and he's not afraid of anybody."   After Sanchez said something to him, however, he put the gun away.   At the conclusion of Lemoine's testimony, the trial justice issued a cautionary instruction related to her account of that incident.[7]

On January 27, 2006, the jury convicted defendant on all charges.   The defendant moved for a new trial on February 2, 2006, which motion the trial justice denied.   The judgment of conviction was entered on March 31, 2006, from which defendant timely appeals.[8]   The defendant renews his contention on appeal that the trial justice erred in permitting Jimenez and Lemoine to testify that they each had observed defendant in possession of a handgun prior to the murder.   He argues that such evidence is inadmissible under Rule 404(b) of the Rhode Island Rules of Evidence.

## II

### Standard of Review

"This Court has stated that '[t]he admissibility of evidence is within the sound discretion of the trial justice, and this Court will not interfere with the trial justice's decision unless a clear abuse of discretion is apparent.'" *State v. Gautier*, 950 A.2d 400, 411 (R.I.2008) (quoting *State v. Brown*, 900 A.2d 1155, 1159 (R.I.2006)).   Moreover, we recognize that "[t]he line between Rule 404(b) evidence presented for the impermissible purpose of demonstrating propensity and Rule 404(b) evidence presented for one of the specific non-propensity exceptions is 'both a fine one to draw and an even more difficult one for judges and juries to follow.'" *Brown*, 900 A.2d at 1160 (quoting *State v. Garcia*, 743 A.2d 1038, 1052 (R.I.2000)).

## III

### Discussion

■■■   Rule 404(b) prohibits the use of evidence of past crimes, wrongs, or acts "to show the defendant's propensity to commit the crime with which he is currently charged."[9]   *State v. John*, 881 A.2d 920,

---

6. Sanchez's reasons for agreeing to pay his uncle's debts never were explained at trial.

7. The trial justice instructed the jury,

> "You heard this last witness describe a prior occasion the defendant allegedly displayed a firearm that she spoke of in connection with speaking with [Sanchez] regarding some debt, allegedly.   Bear in mind that the defendant is not charged with any crime, or criminal transgression as to that day with respect to any firearm, or alleged misconduct on that day.   Any such evidence, to the extent that it has been admitted, is provided to you for the very limited purpose, and that is, as it may, in your minds, relate to the defendant's motive, or his intent, or his plan, or

his identity with respect to charges for which he is presently on trial."

8. Although defendant prematurely filed his appeal, because his judgment of conviction later was entered, we will treat his appeal as timely.   *State v. Ros*, 973 A.2d 1148, 1159 n. 14 (R.I.2009).

9. Rule 404(b) of the Rhode Island Rules of Evidence provides:

> "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith.   It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or to prove

926 (R.I.2005). Such evidence may, however, be used for any proper purpose, including proof of motive, opportunity, or identity. *See State v. Parkhurst*, 706 A.2d 412, 424 (R.I.1998) ("Although Rule 404(b) mandates that evidence of other crimes or bad acts is not admissible to prove the propensity of a defendant to commit crime, such evidence is admissible to show a fact that tends to prove that the defendant is guilty of the crime charged."). It is only when evidence of prior acts is offered to prove that the accused has a criminal disposition and, therefore, is more likely to have committed the crime of which he stands accused, that Rule 404(b) requires its exclusion. *See Brown*, 900 A.2d at 1160. Moreover, "Rule 403 [of the Rhode Island Rules of Evidence] cuts across the rules of evidence and is always a consideration in a trial justice's ruling on the admissibility of Rule 404(b) evidence." *State v. Gaspar*, 982 A.2d 140, 148 (R.I.2009). The defendant contends that the trial justice erred in permitting testimony about his possession of a handgun prior to the murder, which, he avers, should have been excluded under Rule 404(b). We disagree.

In ruling on defendant's motion *in limine*, the trial justice engaged in a two-step analysis, first evaluating whether the testimony was relevant under Rule 404(b) and, if so, whether it should have been excluded under Rule 403 as unfairly prejudicial or confusing. The trial justice concluded that "the evidence that the state has suggested can be produced, very much fits squarely within the [Rule] 404(b) rubric as evidence, for example, of this defendant's opportunity, his intent, and, as well, [his] identity as the shooter." Moreover, the trial justice determined that the evidence was not unfairly prejudicial. We

will address the testimony of Ms. Lemoine and Mr. Jimenez separately.

■ The defendant argues that the trial justice should have prohibited Lemoine from testifying about defendant's possession of a gun several months before the murder. The testimony arose as Lemoine sought to explain defendant's motive for the murder. She described how defendant had visited Sanchez one afternoon and began speaking with him in a "stern" tone and demanding payment of his uncle's debt. As the argument became more heated, Lemoine testified that defendant "pulled a gun from the side of his jacket and just was basically showing" the weapon.

Clearly, defendant's previous threatening behavior towards Sanchez because of an outstanding debt was highly probative of his motive. *See State v. Torres*, 787 A.2d 1214, 1221 (R.I.2002); *State v. Pule*, 453 A.2d 1095, 1098 (R.I.1982) ("Evidence of a prior threat made by a defendant is relevant to the question of whether the defendant 'acted with malice or premeditation, or whether he had a motive to commit the crime.'") (quoting 1 Wharton, *Criminal Evidence* § 201 at 414–15 (13th ed. 1972)). Indeed, Jimenez testified that defendant stated that he had given Sanchez a "long enough time to pay" immediately before shooting him in the Veazie Street School field. Thus, because the evidence was admissible for purposes other than proof of propensity, Rule 404(b) does not require its exclusion.

■ Similarly, we are satisfied that the trial justice did not abuse his discretion in finding that Jimenez's testimony that defendant frequently carried a handgun was relevant both to identify him as the murderer and to establish that he had the opportunity to commit the crime.[10] Al-

---

that defendant feared imminent bodily harm and that the fear was reasonable."

**10.** Jimenez testified on direct examination that defendant "always had a gun on him,"

though defendant cites our opinion in *State v. Brash,* 512 A.2d 1375 (R.I.1986), as supportive authority, that case is clearly distinguishable from the facts of the case at bar. In *Brash,* the trial justice permitted the state to spend an inordinate amount of time and energy admitting and explaining a wide variety of firearms that bore no relation to the charged offense. *Id.* at 1381–82. Here, the state did not seek to admit any firearms allegedly belonging to defendant; rather, it sought to elicit testimony indicating that defendant had access to a handgun. *See United States v. Woods,* 613 F.2d 629, 636 (6th Cir.1980) ("possession of the firearms and ammunition [may be] admissible under [Rule 404(b) of the Federal Rules of Evidence] on the independent ground that it tended to show [the defendant] had the 'opportunity' to commit the bank robbery, since he had access to weapons similar to those used to commit it"); *see also* David P. Leonard, *The New Wigmore: A Treatise on Evidence,* ch. 11, § 11.7.1 at 677 (2009) (possession of a weapon may be used to "establish that a person had the means by which to commit a crime").

This evidence was relevant despite Jimenez's inability to say definitively that the handgun he had seen defendant carry was the same as the "chromed-colored" firearm he described as the murder weapon. *See People v. Hawley,* 112 Mich.App. 784, 317 N.W.2d 564, 567 (1982), *rev'd on other grounds,* 417 Mich. 975, 332 N.W.2d 398 (1983) (evidence of prior handgun ownership held relevant even when it is not established that the weapon described by a witness was the same used to commit the charged crime because identity was at issue and it showed that the defendant owned a handgun capable of firing). Evidence that defendant frequently carried a handgun, if true, was relevant to demonstrate that he had access to a weapon and had the opportunity to murder Sanchez.

▮ Finally, we consider whether the trial justice erred by not excluding the challenged testimony of Lemoine or Jimenez under Rule 403 as unfairly prejudicial or confusing. Rule 403 provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury * * *." The application of Rule 403 is committed to the sound discretion of the trial justice. *Gaspar,* 982 A.2d at 148.

▮ In the case before us, we agree with the trial justice that the proffered testimony was "extraordinarily relevant" and "clearly probative." Thus, the bar is set rather high for defendant to attempt to show that the contested evidence is unduly prejudicial. As the trial justice noted in ruling on defendant's motion *in limine,* "[u]nless evidence is of limited or marginal relevance and enormously prejudicial, the trial justice should not act to exclude it." *State v. Pratt,* 641 A.2d 732, 741 (R.I.1994) (quoting *Wells v. Uvex Winter Optical, Inc.,* 635 A.2d 1188, 1193 (R.I.1994)). It is our opinion that the trial justice did not abuse his discretion by allowing the testimony into evidence. Moreover, the trial justice gave proper limiting instructions after both Lemoine's and Jimenez's testimony, thereby abating the risk of confusion in the minds of the jurors as to the permissible uses of such evidence; defendant did not object to either instruction.

It is abundantly clear to us that the trial justice engaged in the appropriate analysis of the testimony offered by both Jimenez and Lemoine by first evaluating the relevance of the proffered testimony under Rule 404(b) and then carefully weighing

---

but during cross-examination he stated that defendant "sometimes" carried a gun.

the probative value of the testimony against the danger of unfair prejudice under Rule 403. Accordingly, we discern no grounds for reversing his well-reasoned ruling.

## IV

### Conclusion

For the reasons set forth in this opinion, the judgment of the Superior Court is affirmed and the papers of the case shall be returned to that court.

Justice INDEGLIA took no part in the consideration or decision of this appeal.