May 22, 2023

**Supreme Court**

No. 2021-282-C.A.
(K2/18-249A)

State             :

v.             :

Michael DeCosta             :

NOTICE:   This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 or Email opinionanalyst@courts.ri.gov  of  any  typographical  or other formal errors in order that corrections may be made before the opinion is published.

| State | : |
| :--- | :--- |
| v. | : |
| Michael DeCosta. | : |

Present:  Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

**O P I N I O N**

**Justice Lynch Prata, for the Court.**  On February 27, 2020, a Kent County Superior Court jury found the defendant, Michael DeCosta (defendant or DeCosta), guilty of felony assault resulting in serious bodily injury, in violation of G.L. 1956 § 11-5-2.  He was thereafter sentenced to a term of twenty years at the Adult Correctional Institutions.  Substance abuse evaluation and treatment, anger management and counseling, and a no-contact order were also imposed.  A judgment of conviction entered on August 3, 2020, and defendant timely appealed.

The defendant raises one issue on appeal before this Court.  He contends that the trial justice erred in admitting evidence that defendant struck an unrelated person in an unrelated event earlier on the evening in question, in violation of Rules 404(b) and 403 of the Rhode Island Rules of Evidence.  For the reasons stated herein, we affirm the judgment of the Superior Court.

- 1 -

**Facts and Travel**

The defendant was arrested and charged by way of criminal information with one count of felony assault resulting in serious bodily injury. The charge stemmed from an incident that occurred in the early morning hours of December 3, 2017, wherein defendant attended a party at 115 Lincoln Avenue in Warwick, Rhode Island. Prior to attending the party, on the evening of December 2, 2017, the complaining witness, Joseph Napolillo (Napolillo), and two friends attended a vigil at Rocky Point Park for a friend who had died by suicide. That same evening, defendant, his then-girlfriend Amanda Paulino (Paulino), and her friend Dakota Migliori (Migliori) had been drinking alcohol and smoking marijuana before the party.[1] Migliori drove defendant and Paulino to the party in her mother's minivan and parked in a lot across the street.[2]

When defendant arrived at the party with Paulino and Migliori, they were greeted by some of their friends including Napolillo. Shortly after they arrived, defendant confronted an individual named Austin "Biz" Freelove after Paulino had a disagreement with Freelove's girlfriend. After the confrontation, Paulino

---

[1] DeCosta and Paulino dated only for a few months; at the time of trial, she was married to another person. For the purposes of this opinion, Paulino will be referred to by her married name.

[2] Lincoln Avenue is a residential street that runs perpendicular to Post Road.

described defendant's demeanor as "[a]ggressive, kind of like fired up." The only interaction between defendant and Napolillo at the party involved a minor-mix up regarding their respective bottles of Hennessy.[3] Napolillo was smoking marijuana and drinking alcohol. Napolillo's friend, Errol Carrillo (Carrillo), lived down the street from 115 Lincoln Avenue and was at the party. Carrillo was drinking alcohol, was smoking marijuana, and was very intoxicated. Carrillo claimed that he heard defendant yelling that he would fight someone.

At some point during the night, defendant, Paulino, and Migliori left the party and drove to Cumberland Farms, where they purchased soda to mix with their alcohol. Upon leaving the Cumberland Farms, they returned to the same parking lot across the street from the party. The defendant exited the van to talk to other partygoers who were in the parking lot, including Napolillo. Paulino and Migliori remained in the van listening to music, checking their cell phones, and chatting. Meanwhile, at 2:05 a.m., Carrillo called Napolillo to tell him that he wanted to leave the party, and Napolillo responded that he was in the parking lot with a few people from the party. These individuals were on the phone with an individual whose last name was Cloutier.

The parking lot eventually cleared out, but defendant remained there talking to a single individual. Paulino stated that defendant's voice became louder and that

---

[3] Hennessy is a type of brandy that is made in the Cognac region of France.

he and the other person were raising their hands.  Moments later, Paulino heard a bang and a thud.  The defendant, in a panic, then got into the vehicle and said "[w]e need to get the * * * out of here now."  Both women testified that defendant had blood on his knuckles and that he said he had knocked someone out.[4]  Migliori stated that defendant asked her not to mention the incident.  They drove to a convenience store farther away from the party, where defendant used water bottles to clean his bloody knuckles and discard his sweatshirt, which had blood on it. Paulino and Migliori have differing recollections of what occurred after they drove away from the scene of the incident, but eventually defendant and Paulino were both dropped off at Paulino's house in Warwick.

In the meantime, Carrillo stepped outside the party and noticed a car driving away from the house.  From a distance, he saw something on the ground in the parking lot and believed it could be someone from the party laid out drunk.  Other partygoers exited the house, and, with Carrillo, they approached the person on the ground to discover that it was Napolillo.  When Carrillo found Napolillo, his mouth and nose were full of blood and he was vomiting.  The group of partygoers brought Napolillo back into the house and called 911.  Sergeant Stephen Major of the Warwick Police Department responded to the call with fire personnel and sought to check on the medical condition of an individual at the party.  The people at the party

---

[4] Bloodstains from the back seat of the minivan matched defendant's DNA.

- 4 -

responded to his presence by stating, "Get the * * * out. He's not going to rat. We're not going to rat." Sergeant Major located Napolillo, who appeared intoxicated. Napolillo stated that he was fine and told fire personnel that his injuries were the result of falling.

Napolillo was taken to Kent County Hospital (the hospital) at approximately 3:00 a.m., where his blood alcohol level registered at .092. At the hospital, Napolillo stated for the first time that he was assaulted but did not name an assailant. Upon learning this information from medical personnel, Sgt. Major sent an officer to the hospital. When the officer arrived, Napolillo was no longer able to communicate. Shalini Boodram, M.D., testified that Napolillo suffered a traumatic brain injury, which resulted in two craniotomies or brain surgeries, a tracheostomy, and the insertion of a feeding tube.[5] He remained in the intensive-care unit for over a month and was then placed in a rehabilitation center to receive occupational, speech, and physical therapy. Napolillo was discharged in February 2018 but was still unable to walk, work, drive, or write.

Detective Ryan Santo of the Rhode Island State Police Fugitive Task Force executed an arrest warrant for defendant on December 12, 2017. Members of the

---

[5] Doctor Boodram testified that traumatic brain injuries are graded on what is known as the Glasgow Coma Scale, which ranges from 3 to 15; with 3 being unresponsive and constituting the most severe brain injury, and 15 constituting the mildest brain injury. Napolillo was graded as a 3 when he was assessed upon entering the hospital.

Task Force covered the two entrances to defendant's mother's house and then knocked and announced their presence. Detective Santo testified that when he entered the home, he heard movement inside the house that sounded like someone other than defendant's mother or girlfriend, the only two people identified to be in the apartment. Detective Santo set out to search for defendant, who he suspected had been in the home and fled. Detective Santo started driving and spotted him several hundred feet from the house getting into a truck registered to his mother. The truck was stopped, defendant was arrested, and he informed Det. Santo that he had escaped by climbing out of the kitchen window.

On March 19, 2018, Napolillo met with Warwick Police Lieutenant Andrew Sullivan and gave his statement to the police.[6] In the statement, Napolillo recalled that earlier in the night defendant hit an individual named Cloutier in an unrelated event. Napolillo stated that he remembered that defendant was talking to him outside in the plaza. Napolillo explained that defendant punched him in the face, he became unconscious, and woke up covered in blood. After arriving and later passing out at the hospital, Napolillo does not recall anything that occurred until he woke up on January 16, 2018.

---

[6] Because Napolillo could not write when he met with Lieutenant Sullivan on March 19, 2018, his mother transcribed his verbal statement.

At trial, Napolillo could not recall anything that occurred after arriving at the party. He did not recall what prompted the assault, what happened in the parking lot, or anything about defendant's incident with Cloutier. When Napolillo read his police statement into the record, defense counsel objected to certain parts of the statement, including the sentence at issue: "Mike DeCosta had hit John Cloutier previously that night." At sidebar, defense counsel argued that the evidence was inadmissible under Rules 404(b) and 403 of the Rhode Island Rules of Evidence. The state contended that the statement related to defendant's state of mind. The trial justice allowed a redacted statement to be read into the record by Napolillo.

Thereafter, the trial justice permitted the state to make the statement, including the sentence regarding the Cloutier assault, as a full exhibit as evidence of defendant's common plan, scheme, or frame of mind toward Napolillo, pursuant to Rule 404(b). Defense counsel objected. The trial justice gave an instruction to the jury that they could use this information only for the limited purposes of defendant's intent, plan, or scheme toward Napolillo, and not as evidence of bad character or criminal propensity, and went on to give the same instruction during the final charge. The jury returned a verdict finding defendant guilty on the charge of felony assault resulting in serious bodily injury. The defendant thereafter timely appealed.

## Standard of Review

"It is well settled that we review a trial justice's decision admitting or excluding evidence under an abuse of discretion standard." *State v. Husband*, 162 A.3d 646, 655 (R.I. 2017) (brackets omitted) (quoting *State v. Pona*, 66 A.3d 454, 465 (R.I. 2013)). The trial justice is vested with the discretion to determine whether evidence is properly admitted pursuant to Rule 404(b) and this Court will not interfere with that decision barring an abuse of discretion. *State v. Martinez*, 59 A.3d 73, 85 (R.I. 2013). We will reverse a trial justice's ruling on the admissibility of evidence only where "it constitutes a clear abuse of discretion." *State v. Brown*, 42 A.3d 1239, 1242 (R.I. 2012); *see also State v. Smith*, 39 A.3d 669, 673 (R.I. 2012).

## Discussion

On appeal, defendant contends that the trial justice erred in admitting evidence that he hit Cloutier earlier in the night. Specifically, defendant argues that the evidence was inadmissible under Rule 404(b). Further, defendant asserts that the evidence was inadmissible because its probative value was substantially outweighed by the prejudicial effect of its admittance. Finally, defendant suggests that admitting evidence of the altercation with another individual earlier in the night was prejudicial error and warrants a new trial.

Rule 404(b) prohibits admission of "[e]vidence of other crimes, wrongs, or acts * * * to prove the character of a person in order to show that the person acted in

conformity therewith." However, "that rule does not 'require exclusion of otherwise legally probative evidence simply because such evidence might also suggest past criminal activity.'" *State v. Garcia*, 743 A.2d 1038, 1051 (R.I. 2000) (quoting *State v. Gordon*, 508 A.2d 1339, 1348 (R.I. 1986)). The mere fact that the evidence may be prejudicial does not render it inadmissible. *See State v. Brown*, 900 A.2d 1155, 1164 (R.I. 2006). In *State v. Ciresi*, 45 A.3d 1201 (R.I. 2012), this Court held, in accordance with 404(b), that prior acts of uncharged conduct are admissible evidence for purposes other than propensity, such as motive, opportunity, intent, preparation, plan, or knowledge. *Ciresi*, 45 A.3d at 1213.

The defendant argues that the trial justice erred in admitting into evidence what he calls "extraneous propensity evidence." While discussing the admissibility of the sentence at issue, "Mike DeCosta had hit John Cloutier previously that night[,]" outside of the jury's presence and on the record, the trial justice used the terms disposition and predisposition. He explained that the term predisposition was sometimes appropriate in sexual assault cases, but he would instruct the jury only on three uses for the prior incident, "defendant's plan, scheme, or intent towards Mr. Napolillo." The next morning before the jury was brought in the courtroom, the trial justice explicitly emphasized that the instruction was not for propensity. "[W]hen Rule 404(b) evidence is admitted 'the trial justice must instruct the jury on the limited purpose for which the evidence may be considered.'" *State v. Clements*, 83

A.3d 553, 564 (R.I. 2014) (quoting *State v. Robinson*, 989 A.2d 965, 980 (R.I. 2010)). The specific instruction given to the jury during the trial was as follows:

> "There was a situation yesterday towards the very end of Mr. Napolillo's testimony where -- I think it was when they were addressing the content of State's l, a full exhibit, where he made a statement to the police department. And within [Napolillo's] statement there was testimony * * *, that he indicated prior to his alleged assault by the defendant that the defendant had hit another individual earlier that same evening, and that was contained in the statement. I want you to understand that that's what is called evidence of prior acts or conduct, and we have a rule of evidence that when that type of evidence comes in, I want you to understand, and please bear in mind that this defendant, Mr. DeCosta, has not been charged with any criminal offense arising out of that alleged conduct that I just described to you, and you are not permitted to use that piece of testimony to find that the defendant was a person of bad character or that he might have a criminal propensity, and, therefore, he must have committed the criminal offense that he's charged with in this case.
>
> This evidence that I referred to, to the extent that you decide to consider, you still have to decide eventually the credibility of everything you hear in light of all the evidence you hear, but if you decide to consider that evidence, it is admitted for the limited purpose as it may in your minds relate to the defendant's plan, scheme, or intent *towards Mr. Napolillo* on that particular evening." (Emphasis added.)

When evaluating whether a trial justice abused his or her discretion in admitting Rule 404(b) evidence, this Court looks to the trial justice's underlying reasons for the decision. *State v. Dubois*, 36 A.3d 191, 200 (R.I. 2012). Here, while the statement may indicate a general plan, scheme, or intent of defendant to hit or

fight someone that evening, the Cloutier assault had no bearing on defendant's intent towards Napolillo and is not evidence of the assault of Napolillo. We have previously stated that this form of evidence is admissible to establish intent towards the victims in circumstances where the prior bad act was against that same victim. *See Martinez*, 59 A.3d at 87 (affirming ruling allowing evidence of prior assaults against the victim to establish intent); *State v. Lopez*, 45 A.3d 1, 21 (R.I. 2012) (holding that the trial justice did not err in allowing evidence of prior acts of violence toward the decedent because they showed motive and intent). That is not the case here. There is no evidence to suggest that defendant hitting Cloutier earlier in the evening had any connection to defendant's plan, intent, or scheme towards Napolillo. Moreover, the state seems to concede this point by arguing that the particular statement is relevant by conflating state of mind with common plan, scheme, or intent. Therefore, we conclude that the trial justice abused his discretion in admitting the statement.

Accordingly, our task is to determine whether admission of that statement would influence the average jury relative to defendant's guilt or innocence or whether it amounted to harmless error. "In order to meet the harmless-error test, there must be proof beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *State v. Mercurio*, 89 A.3d 813, 822 (R.I. 2014) (quoting *State v. Smith*, 446 A.2d 1035, 1036 (R.I. 1982)). This Court has used

numerous factors to determine whether an error was harmless, "including the relative degree of importance of the witness testimony to the prosecution's case, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and the overall strength of the prosecution's case." *Id.* (deletions omitted) (quoting *State v. Bustamante*, 756 A.2d 758, 766 (R.I. 2000)). "The admission of objectionable evidence is harmless if we determine that it is not reasonably possible that such evidence would influence an average jury on the ultimate issue of guilt or innocence." *State v. Gomes*, 764 A.2d 125, 136-37 (R.I. 2001) (quoting *State v. Burns*, 524 A.2d 564, 568 (R.I. 1987)).

We are of the opinion that the overall strength of the prosecution's case is robust, such that the admission of this statement under the trial justice's instruction would not influence an average jury on the question of guilt. *See State v. Momplaisir*, 815 A.2d 65, 71 (R.I. 2003). The trial justice determined that the testimony of Migliori, Paulino, and Napolillo was credible, in particular he noted "that when Mr. DeCosta rushed into the vehicle, both Ms. Paulino and Ms. Migliori observed his knuckles were bloody, and Ms. Migliori heard him say, 'I knocked him out with one punch.'" While there was no direct eyewitness of defendant assaulting Napolillo at the scene, the trial justice, at the hearing on the motion for a new trial laid out the state's evidence, citing:

"[B]oth men were having a conversation with raised voices at times at the rear of Dakota Migliori's minivan in the parking lot. And following that conversation Mr. DeCosta rushed into the vehicle after Amanda Fontes Paulino heard a bang or thud, and he stated, '[w]e need to get the * * * out of here now,' and that shortly thereafter Mr. Napolillo was found in that parking lot lying on the ground, bloodied, vomiting, and requiring emergency medical attention * * * ."

The trial justice found that a reasonable jury could have relied on this substantial, credible evidence to find defendant guilty. The DNA evidence of bloodstains from the back of the van matched defendant's DNA. The defendant attempted to flee from police officers when they arrived with a warrant for his arrest. The evidence was so significant that at trial, defense counsel argued that the statement was not reasonably necessary to be admitted because "[t]he State appears to have ample evidence, most of which we haven't heard yet, but ample evidence to prove the charge of felony assault." The state referenced the statement only in passing in its closing argument. We are satisfied that the instruction by the trial justice made clear to the jury the limited purpose for which they could consider the statement. After reviewing all the evidence with the required degree of caution, we are convinced beyond a reasonable doubt that the admission of Napolillo's statement did not contribute to the jury's evaluation of the evidence and defendant's conviction and amounted to harmless error.

Furthermore, the trial justice did not explicitly refer to Rule 403 in his ruling; however, his analysis demonstrates that he balanced the evidence and considered the interests of each party. *See State v. Cavanaugh*, 158 A.3d 268, 281 (R.I. 2017) (noting that the trial justice should "balance the evidence to determine whether its probative force is substantially outweighed by the danger of unfair prejudice") (quoting *State v. Patel,* 949 A.2d 401, 413 (R.I. 2008)); *see also State v. Cook*, 45 A.3d 1272, 1280 (R.I. 2012). Specifically, the trial justice determined that "it's a fair balancing of the interests of the State" and that he had "eliminated a substantial part of that statement in an effort to be fair to the defendant." At other points in the trial, the trial justice was explicit in determining that evidence was unduly prejudicial and excluded that evidence on grounds of Rules 403 and 404(b). That was not the case here. The failure by the trial justice to specifically use the phrase "Rhode Island Rule of Evidence 403" while conducting the relevant analysis, and as the parties argued about that analysis, does not constitute error.

## Conclusion

For the reasons set forth in this opinion, we affirm the decision and judgment of the Superior Court. The record shall be remanded to the Superior Court.



# STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE

Licht Judicial Complex
250 Benefit Street
Providence, RI  02903

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | State v. Michael DeCosta. |
| **Case Number** | No. 2021-282-C.A.<br>(K2/18-249A) |
| **Date Opinion Filed** | May 22, 2023 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Associate Justice Erin Lynch Prata |
| **Source of Appeal** | Kent County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Daniel A. Procaccini |
| **Attorney(s) on Appeal** | For State:<br><br>Virginia McGinn<br>Department of Attorney General |
| | For Defendant:<br><br>Camille A. McKenna<br>Rhode Island Public Defender |